## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**CAROL EGIDIO,**
individually and on behalf of herself
and all others similarly situated,

      Plaintiff,

v.

**ALL-CLAD METALCRAFTERS, LLC,
and GROUPE SEB USA, INC.**

      Defendants.

Case No.: 1:20-CV-12025

**Jury Trial Demanded**

**CLASS ACTION COMPLAINT**

### CLASS ACTION COMPLAINT

Plaintiff Carol Egidio ("Plaintiff" or "Ms. Egidio"), by and through undersigned counsel, on

behalf of herself and all others similarly situated, brings this Class Action Complaint against All-Clad

Metalcrafters, LLC and Groupe SEB USA, Inc. (collectively "All-Clad" or "Defendants") and in

support allege, upon information and belief and based on the investigation to date of their counsel,

as follows:

### NATURE OF ACTION

1.      All-Clad is one of the largest cookware companies in the United States. It designs,

manufactures and sells a variety of metal crafted products, including kitchen appliances, bakeware,

kitchen tools, and cookware.

2.      All-Clad's bonded cookware portfolio includes pots, pans, skillets, and "sauciers." Its

D3, D5® and LTD[1] Stainless Steel Collections ("Cookware" or the "Products"), which are the

subject of this action, are among All-Clad's top selling products. On its website, All-Clad boasts that

---

[1] D3, D5, and LTD Cookware is often identified or referred to as d3, d5, and ltd by All-Clad and
retailers.

"All-Clad bonded cookware is still handcrafted in Canonsburg, Pennsylvania, with American-made steel--the same way it was four decades ago. It is still widely sought after by the world's top chefs and passionate home cooks."[2] Over the course of those four decades, All-Clad has gained the trust of consumers, who reasonably believe that All-Clad products are made with quality materials, and that the All-Clad products can be used safely, as intended and marketed.

3.    The Cookware, as described by All-Clad, is "compatible on all induction as well as traditional cooktops,"[3] and  "[s]afe for gas, electric, ceramic, and induction stovetops."[4]  All-Clad further represents that its "unparalleled level of durable craftsmanship and performance is guaranteed to last a lifetime."[5]

4.    All-Clad offers several collections of multi-ply constructed cookware, including the D3, D5, and LTD Stainless Steel Collections.  The designs of the Cookware are substantially similar, and the three are the subject of this class action lawsuit.

5.    Prior to undersigned counsel's filing of the class action complaint in *Mears v. All-Clad Metalcrafters, LLC, et al.*, 3:20-cv-02662-SI (N.D. Cal.) on April 16, 2020, the Cookware was uniformly marketed, labeled, and represented to consumers as being conveniently dishwasher-safe, to make clean-up easier for consumers.  In fact, on its website, All-Clad represented its stainless-steel cookware as "dishwasher-safe,"[6] even including a picture on its website of this cookware inside of a

---

[2] https://www.allcladchefs.com/about  (last accessed November 5, 2020).
[3] https://www.all-clad.com/d3-stainless-3-ply-bonded-cookware-set-nonstick-2-piece-fry-pan-promo-set-8-10-inch.html (last accessed November 5, 2020).
[4] https://www.all-clad.com/d3-compact-3-ply-bonded-cookware-set-5-piece-set.html (last accessed November 5, 2020).
[5] Exhibit A (Limited Lifetime Warranty).
[6]  https://www.all-clad.com/c/D5-Stainless-3-Qt-Essential-Pan-/p/8701005595 (last accessed April 1, 2020); https://www.all-clad.com/d3-compact-3-ply-bonded-cookware-set-5-piece-set.html (last accessed November 5, 2020).

dishwasher for consumers to further appreciate the convenience of this dishwasher-safe feature.[7]



6.      All-Clad even went further by advising consumers that "[i]t is recommended that before you use your Stainless Steel All-Clad you wash it in the dishwasher first to remove any manufacturing residues and this will help to keep it shiny."[8]

7.      Since the filing of the *Mears* lawsuit, and upon information and belief, in response to that filing, Defendants have removed many, if not most, of the dishwasher safe representations from their website, and now recommend that consumers, "Hand wash to maintain the pan's beauty."[9]

8.      While All-Clad has removed many of the dishwasher safe representations, some still remain on its website under the D3 Cookware "Description" as follows: "Dishwasher safe and compatible for all cooking surface,"[10] and "Dishwasher safe Made in USA Lifetime warranty."[11]

9.      Further, All-Clad's authorized retailers, including *inter alia*, Williams Sonoma, Bed

---

[7] https://www.all-clad.com/c/D5-Stainless-3-Qt-Essential-Pan-/p/8701005595 (last accessed April 1, 2020).

[8] *Id.*

[9] https://www.all-clad.com/d5-stainless-brushed-5-ply-bonded-cookware-saute-pan-with-lid-3-quart.html (Last Accessed October 15, 2020).

[10] https://www.all-clad.com/d3-stainless-3-ply-bonded-cookware-fry-pan-14-inch.html (Last Accessed October 15, 2020).

[11] https://www.all-clad.com/d3-compact-3-ply-bonded-cookware-set-5-piece-set.html (Last Accessed October 15, 2020).

CLASS ACTION COMPLAINT

Bath & Beyond, and Bloomingdales, continue to market the Cookware as dishwasher safe.[12]

10.     Although All-Clad is aware of its material misrepresentations regarding the Cookware's dishwasher safety, it continues to defraud consumers and its own retailers.

11.     Likewise, even though All-Clad is aware that the Cookware is not dishwasher safe, it continues to replace the Cookware under its warranty with equally defective Cookware.

12.     The cost of a single piece of the Cookware is between $80.00 and $500.00 MSRP, and the cost of an entire set is priced as high as $1,600.00 MSRP.

13.     As more fully described below, every piece of the Cookware contains a common defect that makes it unreasonably dangerous, as during the approved dishwasher cleaning, the second layer of aluminum deteriorates away from the already razor thin stainless steel top layer (cooking surface), leaving this top layer protruding from the Cookware and creating a condition too sharp for human contact, and unsuitable for its intended use  ("Defect").

14.     Accordingly, the Cookware is unreasonably dangerous and not fit for household use.

15.     The Defect and its damage to the Cookware is not a result of consumer misuse or error. Ordinary, foreseeable, and even recommended use of the dishwasher to clean the Cookware can cause the aluminum to deteriorate in a way which creates a sharp, hazardous condition, and renders the Cookware too unsafe to use.

16.     All-Clad has undertaken a deliberate and willful pattern of  conduct (including taking

---

[12] https://www.williams-sonoma.com/products/all-clad-tri-ply-stainless-steel-10-piece-cookware-set/?pkey=call-clad-tri-ply-stainless-steel&isx=0.0.253; https://www.williams-sonoma.com/products/all-clad-d5-stainless-steel-10-piece-cookware-set/?pkey=call-clad-d5-stainless-steel&isx=0.0.413; https://www.bedbathandbeyond.com/store/product/all-clad-d3-stainless-steel-10-piece-cookware-set/1018489368?keyword=all-clad-d3; https://www.bedbathandbeyond.com/store/product/all-clad-d5-reg-brushed-stainless-steel-cookware-collection/203666?opbthead=true&ta=typeahead&keyword=all-clad-d5; https://www.bloomingdales.com/shop/product/all-clad-d5-stainless-brushed-7-piece-cookware-set-100-exclusive?ID=3670031&CategoryID=3865 (Last Accessed October 15, 2020).

CLASS ACTION COMPLAINT

active measures) aimed at concealing the Cookware Defect from its consumers, including the Plaintiff.

17.     At all relevant times, All-Clad knew or should have known about the Defect but nevertheless marketed, advertised, and sold the Cookware without warning consumers that the Cookware is likely to deteriorate in the dishwasher causing the top stainless steel layer to become nearly razor sharp, leaving it in a hazardous condition, and unsuitable for safe cooking or cleaning.

18.     Indeed, rather than providing consumers with new, non-defective Cookware after it has deteriorated and became hazardous to use, All-Clad either replaced the Cookware with the same defective Cookware, improperly denied the warranty claim, and/or instructed the consumer to stop using citrus or acidic-based detergent in the dishwasher. Thus, All-Clad failed to disclose the known Defect or provide the customer with a non-defective, dishwasher safe replacement product.

19.     The replacement Cookware also fails, or is likely to fail in the same manner, leaving consumers fearful of unsafe, sharp edges, or unable to clean the Cookware in the dishwasher, as was advertised and intended.

20.     As a direct and proximate result of All-Clad's concealment of the Defect, its failure to warn customers about the Defect before their purchase of the Cookware, and its failure to recall the Product, remedy the Defect, or provide warnings or proper care and usage instructions, Plaintiff and other similarly situated customers ("Class" or "Class Members") purchased and used All-Clad's defective Cookware.  Plaintiff and Class Members were unaware of the Defect at the time they purchased the Cookware.  Had Plaintiff and Class Members known the Cookware contained a defect rendering it unable to be washed in a dishwasher without causing damage to the Cookware, they would not have purchased the Cookware or would have paid substantially less for the Cookware.

21.     Plaintiff and putative Class Members' Cookware have failed (or are likely to fail) as a result of the Defect when Plaintiff and Class Members use the Products as intended, resulting in

damage to the Cookware, and leaving it unsuitable for safe cooking or cleaning.

22.     Plaintiff and all putative Class Members' Cookware contain the same Defect at the point of sale, and pose substantially the same safety risk to Plaintiff, Class Members, consumers, and the public. All-Clad's Cookware cannot be used safely for its intended purpose of preparing meals at home after cleaning the Cookware in the dishwasher as represented.

## PARTIES

23.     Plaintiff Carol Egidio is a resident and citizen of Wakefield, Massachusetts.

24.     Defendant All-Clad Metalcrafters, LLC is a Delaware corporation with its principal place of business located in Canonsburg, Pennsylvania.

25.     Defendant Groupe SEB USA, Inc. is a Delaware corporation with its principal place of business located in Millville, New Jersey.

26.     Defendants All-Clad Metalcrafters, LLC and Groupe SEB USA, Inc. design, construct, manufacture, distribute, advertise, market, direct the marketing and advertising of, and sell the Cookware in Massachusetts, and throughout the United States.

27.     At all times relevant herein, both Defendants jointly transacted and conducted business in Massachusetts and continue to do so today.

28.     Defendants are the agents and/or alter egos of each other and the corporate interests of Defendants have merged so that they, in effect, have operated as one and the same entity for the purpose of designing, constructing, manufacturing, distributing, advertising, marketing, directing the marketing and advertising of, and selling the Cookware.

29.     Defendants used, commingled, and combined their resources to design, construct, manufacture, distribute, advertise, market, and sell the Cookware.

30.     At all times relevant herein, Defendants engaged in actual and/or *de facto* joint ventures in relation to the Cookware operations.

**JURISDICTION AND VENUE**

31.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because: (1) there are one hundred or more (named or unnamed) class members, (2) there is an aggregate amount in controversy exceeding $5,000,000.00, exclusive of interest and costs, and (3) there is minimal diversity because Plaintiff and Defendants are citizens of different States.

32.     This Court may exercise personal jurisdiction over Defendants because Defendants do substantial business in this State and within this District, receive substantial compensation and profits from the marketing, distribution, and sales of product in this District, and have engaged in the unlawful practices described in this Complaint in this District.

33.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**COMMON FACTUAL ALLEGATIONS**

34.     All-Clad has been a household name that consumers and professionals have relied upon for safe, quality cooking for more than 40 years.  Beginning in 1967 as a "small metallurgical company [Clad Metals] that specialized in formulating bonded metals for a variety of industries," All-Clad Metalcrafters was eventually established just four years later in 1971.[13]   At that time, All-Clad "began producing professional quality bonded cookware for working chefs and avid home cooks."[14]

35.     According to the company's website, "[t]he brand flourished as early adopters realized the cookware's extraordinary properties and exemplary cooking performance," and further, that "[i]t is still widely sought after by the world's top chefs and passionate home cooks."[15]

---

[13] https://www.all-clad.com/About/history (Last Accessed April 13, 2020).
[14] *Id.*
[15] *Id.*

36.     Upon information and belief, All-Clad was the first to design, patent, and manufacture multi-ply constructed stainless steel cookware, including the D5 Cookware[16] and possibly the D3 and LTD Cookware.

37.     Currently, All-Clad sells the Cookware through hundreds of retailers across the country, including online retailers such as Amazon.com, Williams-Sonoma, Bed Bath & Beyond, Bloomingdale's, Crate & Barrel, cutleryandmore.com, Kitchen Kapers, Macy's, Metro Kitchen, Sur la Table, The Cook's Warehouse, and Wayfair.

38.     In selling and distributing its Cookware, All-Clad has represented it possesses the following notable features and specifications:[17]

- Dishwasher Safe;

- Multi-Ply, Bonded Stainless Steel Construction; and

- 18/10 Stainless Steel Top Layer (Cooking Surface), followed by a Second Aluminum Layer.

| D3 |  |
| --- | --- |

---

[16] https://www.all-clad.com/Collections (Last Accessed April 13, 2020) ("The only cookware of its kind, All-Clad D5 Brushed offers a patented technology with five alternating layers of stainless steel and aluminum…").

[17] https://www.all-clad.com/Collections (Last Accessed April 13, 2020).

| | |
|---|---|
| **D5** |  |
| **LTD** | |

39.     Upon information and belief, since the April 2020 *Mears* filing, All-Clad has discontinued the sale of LTD and replaced it with a new anodized product called "HA1 Hard Anodized" cookware, which does not contain a layer of aluminum and is represented to be dishwasher safe.[18]

40.     Prior to the April 2020 *Mears* filing, All-Clad represented to consumers that the

_____

18 https://www.all-clad.com/ha1-hard-anodized-nonstick-cookware-set-2-piece-fry-pan-saute-pan-with-lid-set-10-inch-4-quart.html (Last Accessed October 15, 2020).

Cookware was "completely dishwasher safe."[19] All-Clad further advised consumers that "[i]t is recommended that before you use your Stainless Steel All-Clad you wash it in the dishwasher first to remove any manufacturing residues and this will help to keep it shiny."[20]

41.    In addition, All-Clad was advertising its stainless-steel Cookware with a photograph of the Cookware in a dishwasher, with a representation that its dishwasher safe feature is "**Convenient**" (shown with a bold heading) and claims that the Cookware is "made with quality materials for a lifetime of beauty and performance."[21] Each of the All-Clad Cookware pieces and collections, until recently, was represented similarly.[22]



42.    All-Clad is engaged in the business of designing, constructing, manufacturing, warranting, marketing, advertising, distributing, and selling the Cookware.  All Cookware is branded with the "All-Clad" logo just under the Cookware handles and is visually recognizable as such.

---

[19] https://www.all-clad.com/search?%21q=&text=dishwasher (FAQs)(last accessed April 13, 2020); *see also* Exhibit A.

[20] *Id.*

[21] https://www.all-clad.com/c/D5-Stainless-3-Qt-Essential-Pan-/p/8701005595 (last accessed April 13, 2020).

[22] *E.g.,* https://www.all-clad.com/Cookware/D3-Compact-5-Piece-Set/p/8400001921 (last accessed April 13, 2020) ("Dishwasher safe for extra convenience.").

43.    The Cookware is used, and is intended by All-Clad to be used, for safe food preparation.  Prior to the *Mears* filing, All-Clad marketed, labeled and promoted the Cookware as dishwasher safe for convenient and low maintenance cleaning.

44.    In fact, the representation that the Cookware is dishwasher safe was so prevalent in All-Clad's marketing that it appears in the following locations:

(a)    Cookware packaging;

(b)    Use and Care Manuals and Instructions;

(c)    On the All-Clad Website in numerous locations, including *inter alia*:

    i.   Stainless Steel Cookware Brochures;

    ii.  Stainless Steel FAQs; and

    iii. On individual piece and multi-piece specifications;[23]

(d)    On authorized retailer websites, including in the *product title* itself, and also, *e.g.* in the product descriptions: "CONVENIENT AND LOW MAINTENANCE: All items included are dishwasher safe."[24]

45.    Accordingly, the dishwasher safe representations were a significant and material misrepresentation to Plaintiff and the Class.

46.    The Cookware Collections have multiple pieces that are all designed and constructed with multi-ply stainless steel construction, most notably with a top surface layer of 18/10 stainless steel followed by a second layer of aluminum.

---

[23] *E.g.* https://www.all-clad.com/Cookware/Fry-Pans/D3-Stainless-12%22-Fry-Pan-with-Lid/p/8701005165; and https://www.all-clad.com/Cookware/D3-Compact-5-Piece-Set/p/8400001921. (Last Accessed April 13, 2020).

[24] https://www.amazon.com/stores/node/2581965011?_encoding=UTF8&field-lbr_brands_browse-bin=All-Clad&ref_=bl_dp_s_web_2581965011 (Last Accessed April 8, 2020).

47.     Each piece in the Cookware Collections contains the same Defect that renders it unreasonably dangerous, not fit for cooking and household use, and not safe for dishwashing.

48.     Expert investigation has revealed that the top layer of stainless steel (the cooking surface) of the Cookware is too thin, and when coupled with a second layer of aluminum that corrodes during any dishwasher cleaning, a hazardous condition is created.

49.     Specifically, the top layer of stainless steel begins as only 0.012 of an inch (four human hairs in thickness) when the steel/aluminum laminate for the Cookware is initially procured. When the steel/aluminum laminate sheet is deep-drawn into the shape of a pot or saucepan the thickness of the steel top layer at the edge is thinned further. When the edge of the Cookware is squared off and buffed down the edge of the top stainless steel layer is reduced yet more to approximately 50 microns, or 0.002 of an inch (approximately half of a human hair in thickness).

50.     The second layer of aluminum is much thicker than the top layer of stainless steel. When immersed with the stainless steel in the dishwashing detergent, the aluminum and steel form a galvanic couple that produces accelerated etching and corrosion of the aluminum.  As the aluminum corrodes away from the layers of stainless steel, what remains at the top is the 0.002 of an inch thin stainless steel layer protruding above the aluminum layer of the Cookware.  Consequently, the thin, sharp top layer of stainless steel becomes an unreasonably dangerous condition for consumers trying to handle the Cookware, including as it is intended.

51.     In other words, the thinner aluminum layers on the multi-ply Cookware accelerate the corrosion due to the larger fractions of stainless steel as compared with aluminum.

52.     Thus, the top two layers of the Cookware are poorly selected, designed, constructed, and combined in a manner that leaves the Cookware *not* dishwasher safe.

53.     In fact, expert testing has revealed that deterioration of the aluminum layer begins after just one hour of regular dishwasher use, and significantly increases through continued dishwasher use.

54.     The Defect leads to the Cookware edges on the corroded pan edges deteriorating to the same cutting edge angle as a razor blade. The tips of the top layer become ragged, like a "worn" razor blade, protruding from the Cookware, and are unavoidably dangerous to the human touch.

55.     Exemplar cross-sections show the etching and loss of aluminum in the second and fourth layers of a D5 sample:



1. Stainless
2. Aluminum

3. Stainless
4. Aluminum

5. Stainless

56.     Likewise, the cross-sections of a D5 sample as photographed below shows how the corrosion of the second and fourth aluminum layers (black) has caused them to pull away from the three stainless steel layers (grey), leaving protruding, sharpened stainless steel edges.





57.     Often when consumers contact All-Clad about the sharpened edges and deteriorated condition of their Cookware, All-Clad represents that citrus based dishwasher detergents are the cause of the problem.

58.     However, as all dishwashing detergents contain some degree of salt (a corrosive agent), the Cookware will deteriorate when cleaned in a dishwasher using any detergents.  Thus, the Cookware is simply not dishwasher safe as represented by Defendants.

59.     This is further evidenced by All-Clad's removal of the dishwasher safe representations following the *Mears* filing.

60.     All-Clad's purported metallurgy and metal bonding experts who designed and constructed the Cookware knew or should have known that the combination of the thin stainless steel top layer coupled with the aluminum would result in unreasonably dangerous conditions when cleaned with any dish detergent in a dishwasher.

61. Alternate designs for the Cookware exist that would have prevented the unreasonably dangerous condition created by the Defect, including the use of thicker stainless steel on the top layer (cooking surface), use of a non-corrosive material for the second layer, and/or changing the manner in which the Cookware's layers are manufactured.

62.     Further, All-Clad had the obligation to provide the proper warning for dishwasher use, and otherwise modify its packaging, care and use instructions, brochures, FAQs, and retailer representations prior to the filing of the *Mears* lawsuit in order to warn that the Cookware is not dishwasher safe, and should be hand washed to reduce the likelihood that the Defect will result in an unreasonably dangerous condition.

63.     All-Clad expressly and impliedly warranted, via packaging, authorized retailer promotion, user manuals, advertisements, brochures, samples, and/or models, that the Cookware is fit for the ordinary purpose for which such goods are sold.

64.     All-Clad expressly warrants in its Limited Lifetime Warranty ("the Warranty") that the Cookware "will be free from defects in material, construction, or workmanship for the lifetime of the product under normal use and following care instructions."  Exhibit A.

65.     The Defect renders the Cookware unfit for the ordinary purpose for which it is used, and it cannot be cleaned as All-Clad represents or the consumer desires.

66.     As a result of the Defect, the Cookware poses an unreasonable risk of harm to consumers and their property, including consumers' dishwashers and cabinetry as the edges become sharpened.

67.     Had Plaintiff, Class Members, and the consuming public known that the Cookware was defective, posed an unreasonable risk of harm to themselves and their property, and would cause damage, they would not have purchased the Cookware or would have paid substantially less for it.

68.     As a direct, proximate, and foreseeable result of the Defect, Plaintiff and Class Members suffered damages, including but not limited to: (a) the difference in value of the Cookware as warranted and the Cookware received; (b) loss of use of the Cookware; (c) property damage; and (d) consequential damage.

## PLAINTIFF'S FACTS

69.     Beginning in the spring or summer of 2015, Plaintiff Carol Egidio became interested in purchasing new dishwasher safe cookware for cooking at home.  Consequently, Plaintiff performed internet research, including visiting all-clad.com and reviewing product reviews online, as well as reading the product information and product reviews at Bed Bath & Beyond.  Based upon the fact that All-Clad was made in the USA, and based upon representations by All-Clad that the D3 Cookware Collection was made for quality, even cooking and, specifically and particularly, that it was dishwasher safe, Plaintiff chose to purchase several pieces of D3 Cookware from Williams-Sonoma for her daughter.

70.     In June of 2015, Ms. Egidio then purchased a set of D3 Cookware for herself from Bed Bath & Beyond.  The total cost of the Cookware she purchased for herself was approximately $594.00.

71.     From the time of purchase until the incident described below, Plaintiff and her daughter used the Cookware as intended, cleaning it in the dishwasher in accordance with the use and care instructions, and otherwise maintaining it in a reasonable manner as an owner of cookware.

72.     In or about the end of 2019-beginning of 2020, Ms. Egidio's daughter cut herself badly on the edge of her Cookware. Consequently, she observed that the Cookware edges had become deteriorated and sharp, and performed an Internet research to determine if the Cookware's condition was anomalous.  After discovering that this issue was common, she notified Ms. Egidio.

73.     After Ms. Egidio's daughter notified her of the safety issues associated with the deteriorated Cookware, Ms. Egidio inspected her own Cookware and likewise observed her Cookware had deteriorated and become sharp.

74.     Following this discovery, Ms. Egidio's daughter notified All-Clad of the defective condition of her Cookware. In response, All-Clad replaced the Cookware belonging to Ms. Egidio's daughter with equally defective Cookware that continued to be represented as dishwasher safe.

75.     As replacing her Cookware with more defective Cookware would be a pointless and futile effort, Ms. Egidio did not request replacement of her Cookware.  Rather, she is forced to hand wash her Cookware to avoid further deterioration, and must take additional precautions to ensure she does not cut herself or damage her kitchen or cabinets.

76.     Because All-Clad fraudulently concealed the Defect from Plaintiff before her purchase, as well as after it was being used, Plaintiff did not suspect (and had no reason to suspect) that there was anything wrong with her Cookware until the Defect manifested and Plaintiff's daughter had harmed herself.

77.     Plaintiff's Cookware did not reach the end of its useful service life before it became unreasonably dangerous, and now is unsuitable for regular use or cleaning. Had Plaintiff known of the Defect, she would have either not purchased the Cookware or would have paid less than she did. Therefore, she did not receive the benefit of her bargain.

## ALL-CLAD'S ACTUAL OR
## CONSTRUCTIVE KNOWLEDGE OF THE DEFECT

78.     All-Clad knew or should have known when it sold the Cookware to the public that the Cookware suffered from the Defect, and that the Defect caused the Cookware to deteriorate and become unreasonably dangerous to use during its expected useful life, represented an unreasonable risk that the Cookware would harm consumers and their property when the edges became sharp, and might result in significant personal injury and/or property damage to consumers and the public.

79.     All-Clad's knowledge of these facts is established through consumer complaints, including several years of public internet posts complaining that the Cookware failed and became harmful during normal use. Despite its knowledge, All-Clad did not remedy or eliminate the Defect in the Cookware or remove it from the stream of commerce.

80.     Instead, All-Clad replaced the defective Cookware with equally defective Cookware, improperly denied warranty claims, and often misrepresented to consumers that citrus dish pods and citrus detergents were the cause of the deterioration and sharpened edges.

81.     All-Clad's actual knowledge of the Defect is evidenced by its reported responses to consumer complaints through retailers, and also its response to one complaint through https://www.saferproducts.gov, cited *infra*.

82.     While there are voluminous reports regarding general deterioration of the Cookware's metals, there are many that specifically describe thin, sharpened edges, which have led to fingers and hands being cut. The online reports date back to purchases made as early as 2013 and continue through present, indicating that All-Clad has likely known about the Defect for close to a decade and

have failed to remedy the Defect, recall the products, or provide appropriate warnings regarding the Defect.

83.    All-Clad's reported responses to customer complaints, as included *infra*, demonstrate that not only is All-Clad aware of the dangerous and potentially harmful defect, it attempts to actively conceal the dangerous defect from consumers and otherwise fails to honor its Warranty.

84.    Customer complaints are available online regarding the Cookware.  A small sample of the online complaints follows.

85.    In December of 2016, a consumer with several pieces of All-Clad cookware complained of similar issues through saferproducts.gov:[25]

> I was given a gift of All Clad LTD pots and pans set. A month later the product started to change. The outside layer of the pots and pans started to warp and become very sharp. My family and I have sustained injury from using them, and we have damaged our cooktop as well. The pots have caused our hands to bleed from use. We followed all of the care instructions, we washed by hand with a gentle soap and soft cloth and use our electric cooktop, so no high heat is used. We have well water that is pure water. Once we noticed the problem with the cookware we sent an email to the company. They responded by saying me as the consumer must have placed them in the dishwasher, or used acid to wash the pots and pans. We also were acccused [sic] of cleaning them with drano. The company claims to have a lifetime warranty, but they will not replace my pots. They have told me for safety reasons to discard my pots because they are causing harm. Company claims they cannot do anything for me because they are not in their eyes defective. If they are not defective, why do I have to discard them.

In response to this consumer complaint, Defendant Groupe SEB USA, Inc., responded generically with:[26]

> Groupe SEB USA, as the parent company of the All-Clad brand, has received this notification. We value your feedback and will give priority to investigating your concerns. If you have not contacted us already, please call 800-255-2523 or contact us through our website www.all-clad.com. Please reference your incident number of 161212-000388 so you are directed to the right representative.

---

[25] https://www.saferproducts.gov/ViewIncident/1614618 (Last Accessed April 9, 2020).

[26] *Id.*

86.     In May of 2017, one consumer of D3 Cookware posted a photograph of the cut on her hand along with the following:[27]

> I bought this pot in November 2014 but the rim core eroded leaving the sharp edges of the inner and outer shell. So I purchased another one eight months ago in August 2016. Within a few months the same issue occurred. I picked the pot up a couple of days ago and inadvertently cut the back of my thumb on the edge. The attached photo tells the story. When first purchased the rim was perfectly level. I have a large collection of All-Clad pots but these Tri-Plys are just awful and I won't be buying any more.

87.     In response to this D3 complaint, another consumer commented that he or she had a similar experience with their D5 Cookware purchased in 2013:[28]

> We've had the same thing happen to us with the D5 line. My husband and I both, worse than a paper cut because it's metal. Ours were purchased Dec 2013, so apparently it's a common issue. We had the Calphalon Tri Ply prior to buying the All Clad and honestly I prefer my previous set. However, the newer set of Calphalon Tri Ply is not the quality of the original anymore. Still on a search for quality multi clad pans.

88.     Again in January of 2018, another consumer reported sharpened edges with his or her D3 Cookware, through Sur la Table's website:[29]

> **DON'T purchase these. You'd be wearing bandages.**
> I bought one of each size of these relatively less expensive All-Clad stainless saucepans with lids when they were offered at a special sale price. The top edges around these pans are SHARP! The upper pan edges will CUT your hands.
>
> No matter how carefully I rinse these pans before loading into the dishwasher, invariably I find myself bleeding from inadvertently touching

---

[27] https://www.amazon.com/gp/customer-reviews/R16Y3IESIBD08L/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B005GFYH6M (Last Accessed April 9, 2020).

[28] *Id.* at Comment 1.

[29] https://www.surlatable.com/pro-1451830-skillet-ss-10in-wlid/PRO-1451830.html (Last Accessed April 9, 2020).

the top of these saucepans. Why would they make them as dangerous as knives?!

The pans are like sliced tubes of stainless steel, with handles riveted on. SHARP EDGES!!!!!!

89.     In August of 2018 another consumer noted on Amazon.com regarding her D3 Cookware: "The top edge on this pot was so sharp it cut my husband's hand when washing the first time. Dangerous."[30]

90.     Numerous other complaints relate to the deterioration of the Cookware's metals and to All-Clad's systematic failure to honor its warranty.

91.     In conjunction with All-Clad's experience designing and selling the Cookware, these facts and complaints illustrate that All-Clad knew or should have known of the Defect.

92.     All-Clad has a duty to disclose the Defect and to not conceal the Defect from Plaintiff and Class Members. All-Clad's failure to disclose, or active concealment of, the serious safety Defect places Plaintiff and Class members at risk of personal injury and/or property damage.

93.     Through at least the filing date of this complaint, All-Clad is still selling the defective Cookware, concealing the Defect, failing to notify consumers of the safety Defect, and failing to recall the Cookware.

94.     Moreover, All-Clad continues to falsely represent through written warranties that the Cookware is free from defect, is of merchantable quality, and will perform dependably for the lifetime of the Cookware.

95.     When corresponding with customers, All-Clad does not disclose that the Cookware suffers from the Defect, is not dishwasher safe, and is a safety hazard. As a result, reasonable consumers, including Plaintiff and Class Members, purchased and used, and continue to purchase

---

[30] https://www.amazon.com/product-reviews/B005GFYH6M/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar (Last Accessed April 9, 2020).

and use the Cookware and rely on the "dishwasher safe" representations, even though it is unsafe to do so.

96.     When All-Clad replaces its Cookware, it fails to disclose the known Defect and replaces the defective Cookware with equally defective Cookware. Some consumers, including the Plaintiff, have purchased different pieces over time, all of which have failed or will fail in the same manner.   Likewise, other consumers, have received replacement Cookware through All-Clad's Warranty, which have failed or will fail in the same manner.

97.     Had Plaintiff, Class Members, and the consuming public known that the Cookware was defective, not dishwasher safe, posed an unreasonable risk of harm to themselves and their property, and would cause personal injury and other damage, they would not have purchased the Cookware.

98.     All-Clad has wrongfully placed on Plaintiff and Class Members the burden, expense, and difficulty involved in discovering the Defect, replacing the Cookware (potentially multiple times), and paying for the cost of damages caused by the Defect.

## TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

99.     All-Clad had actual knowledge for years that the Cookware contains the Defect that causes the metals to deteriorate during dishwasher cycling in a way that creates a sharp, hazardous condition, and renders the Cookware too unsafe to use.

100.     Although All-Clad was aware of the dangerous Defect, and has removed many of its dishwasher safe representations on its website, it still has taken no steps to warn  Plaintiff or the Class of such Defect and the dangers the Defect poses.

101.     At least by 2016, if not earlier, All-Clad had received numerous reports from consumers of incidents of metal deterioration, as well as thinning and sharp edges, creating dangerous conditions which have led to personal injury and other damages.

102.    All-Clad knew or should have known that the thin stainless steel cooking surface, combined with aluminum would corrode in the dishwasher with any detergent, and lead to the unreasonably dangerous condition being reported by Plaintiff and other consumers.  Even with this knowledge and reports of unreasonably dangerous conditions caused by the Defect, All-Clad failed to issue a recall, warn consumers, or take any other  affirmative steps to correct the problem in the Cookware already in the stream of commerce.  Nor did All-Clad take steps to alert members of the Class about the problem or change all of its packaging, brochures, use and care instruction, website representations, or authorized retailer descriptions and specifications.

103.    While All-Clad represents to certain consumers making warranty claims that the deterioration occurs when citrus based detergents are used during dishwashing, it failed to  issue a recall, warn consumers, or take any other  affirmative steps to correct the problem in the Cookware already in the stream of commerce, and All-Clad did not take steps to alert members of the Class or its retailers about the problem or change its packaging, brochures, use and care instruction, website representations, or authorized retailer descriptions and specifications.

104.    Despite its knowledge, All-Clad concealed the fact that the Cookware was defective, even though it had a duty to disclose the Defect.

105.    All-Clad made affirmative and material misrepresentations to consumers during the sale of the Cookware, including that the Cookware was free of defects, was dishwasher safe, and that the Cookware would be replaced for the lifetime of the product.

106.    In fact, All-Clad's Limited Lifetime Warranty provides:[31]

From the date of your purchase in the U.S. or Canada, All-Clad Metalcrafters, LLC ("All-Clad") warrants that any All-Clad cookware item purchased by you, the original purchaser, from All-Clad or an All-Clad authorized retailer will be free from defects in material, construction, or workmanship for the lifetime of the product under

---

[31] Exhibit A.

normal use and following care instructions. All-Clad will repair or replace the All-Clad cookware product in the country of purchase that is covered by this warranty.

107.    However, the Warranty fails of its essential purpose for the following reasons:

(a)    All-Clad consistently replaces the Cookware with more defective Cookware, and without remedying the actual Defect or providing adequate warnings regarding dishwashing;

(b)    All-Clad has misrepresented that the Cookware, including replacement Cookware under the Warranty, will not deteriorate into an unreasonably dangerous condition if the consumer avoids usage of citrus based dishwasher pods or detergents; and

(c)    Other ways which may be revealed during discovery or at trial.

108.    As described herein, All-Clad breached this Warranty at the time it shipped the Cookware (and at the point of sale to consumers) because the Cookware was defective when it came off of the assembly line. Thus, at the time the defective Cookware was shipped and sold to consumers, All-Clad was already in violation of the express warranty.

109.    Further, because All-Clad does not have non-defective, dishwasher safe versions of the Cookware available to replace the non-dishwasher safe Cookware, it is unable to fulfill its warranty obligations at the point of purchase, or anytime thereafter, and the Warranty is therefore breached immediately upon purchase.

110.    In addition, the Warranty is unconscionable as follows:

(a)    In its limitation to the first owner without transferability;

(b)    In its disclaimer of warranties;

(c)    In its exclusion of Cookware purchased from unauthorized retailers which would require consumers to perform research to confirm;

(d)    In its exclusion of certain conditions which precede the eventual deterioration leading to the thin, sharpened, and unreasonably dangerous conditions described herein; and

(e)      In its imitation of remedies, including disclaimer of consequential damages.

111.    The Warranty is further unconscionable given All-Clad's knowledge of the Defect, the existence of the Defect at the point of sale, All-Clad's failure to disclose the Defect at the time of sale, during consumers' use of the Cookware, and during warranty communications, and other reported failures to which All-Clad has or had knowledge.

112.    All-Clad made affirmative misrepresentations to Plaintiff and consumers during warranty claims and other correspondence with consumers lodging complaints, including that the problems were solely caused by the use of citrus based dish detergents in the dishwasher; their Cookware failures were anomalous; they failed to follow the use and care instructions; and in other ways to be discovered.

113.    At all times, All-Clad concealed that the Cookware and any replacements were defective.

114.    All-Clad's concealment was material to Plaintiff and Class Members' decision to purchase the Cookware, accept replacement Cookware, and continue to purchase additional Cookware pieces.  All-Clad's concealment  was knowing, and All-Clad intended to mislead Plaintiff and Class Members into relying upon it. Accordingly, Plaintiff and Class Members relied upon All-Clad's concealment of these material facts and suffered  injury as a proximate result of that justifiable reliance.

115.    The Defect in the design and/or manufacture of the Cookware was not reasonably detectible to Plaintiff and members of the Class at the time of purchase.

116.    All-Clad actively and intentionally concealed the existence of the Defect and failed to inform Plaintiff or Class Members of the existence of the Defect at all times, including when Class Members contacted All-Clad about the problems.  Accordingly, Plaintiff and Class Members' lack of awareness was not attributable to lack of diligence on their part.  In fact, Plaintiff and Class Members'

use of the dishwasher to clean the Cookware was done pursuant to All-Clad's instructions and representations that the Cookware is dishwasher safe.

117.    All-Clad's statements, words, and acts were made for the purpose of suppressing the truth that the Cookware and replacements were defective, and to induce Plaintiff and Class Members to purchase the Cookware based on the convenience of cleaning it in the dishwasher.  Consequently, these were material misrepresentations.

118.    All-Clad concealed the defect for the purpose of delaying Plaintiff and Class Members from filing a complaint on their causes of action.

119.    As a result of All-Clad's active concealment of the Defect and/or failure to inform Plaintiff and members of the Class of the Defect, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.  Furthermore, All-Clad is estopped from relying on any statutes of limitations in light of its active concealment of the  defective nature of the Cookware.

## CLASS ACTION ALLEGATIONS

120.    Plaintiff brings this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the following Class:

> All persons residing in the State of Massachusetts who purchased any All-Clad Cookware from the D3, D5, and LTD Stainless Steel Collections.

121.    Plaintiff reserves the right to modify the class definition if necessary to include additional All-Clad Cookware collections or pieces with the same Defect.

122.    <u>Numerosity</u>: The members of each Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, it consists of thousands of people geographically disbursed throughout Massachusetts. The number of Class Members can be determined by sales information and other records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. The Class is

readily identifiable from information and records in the possession of All-Clad and its authorized retailers.

123. <u>Commonality</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over questions that may affect only individual Class Members because All-Clad has acted on grounds generally applicable to the Class. Such common legal or factual questions include, *inter alia*:

(a)   Whether the Cookware is defective;

(b)   Whether the Cookware is defectively designed and/or manufactured;

(c)   Whether the Cookware is dishwasher safe;

(d)   Whether All-Clad knew or reasonably should have known about the Defect prior to distributing the Cookware to Plaintiff and the Class;

(e)   Whether All-Clad knew or reasonably should have known the Cookware was not dishwasher safe when All-Clad packaged, marketed, advertised, specified, and otherwise represented it was;

(f)   Whether All-Clad concealed from and/or failed to disclose to Plaintiff and the Class the problems with the Cookware;

(g)   Whether All-Clad knew or reasonably should have known about the Defect after distributing the Cookware to Plaintiff and the Class;

(h)   Whether All-Clad knew or reasonably should have known the Cookware was not dishwasher safe after distributing the Cookware to Plaintiff and the Class;

(i)   Whether All-Clad breached express warranties relating to the Cookware;

(j)   Whether All-Clad breached the implied warranty of merchantability and the Song-Beverly Consumer Warranty Act, relating to the Cookware;

(k)   Whether All-Clad's Warranty was unconscionable in any way;

(l)   Whether All-Clad engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing defective Cookware.

(m)   Whether All-Clad violated Mass. Gen. Laws Chapter 93A, §§ 2 & 9;

(n)   Whether All-Clad was negligent in its failure to adequately test;

(o)   Whether All-Clad was negligent in its failure to warn;

(p)   Whether All-Clad is strictly liable for its defective design and/or manufacture of the

Cookware;

(q)  Whether Plaintiff and the Class are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

(r)  Whether All-Clad should be enjoined from selling and marketing its defective Cookware; and

(s)  Other issues which may be revealed in discovery.

124.  <u>Typicality</u>:  Plaintiff's claims are typical of the members of the Class as all  members of the Class are similarly affected by the same Defect and All-Clad's actionable conduct. Plaintiff and all members of the Class purchased the Cookware with a Defect that  makes the Cookware inherently dangerous and not suitable for safely cooking or cleaning as represented. In addition, All-Clad's conduct that gave rise to the claims of Plaintiff and members of the Class (*i.e.* designing and manufacturing defective Cookware, delivering defective Cookware, concealing the Defect, and breaching warranties, statutory, and other duties respecting the Cookware) is the  same for all members of the Class.

125.  <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately protect the interests of the Class because he has no interests antagonistic to, or in conflict with, the Class that Plaintiff seeks to represent. Furthermore, Plaintiff has retained counsel who are experienced and competent in the prosecution of complex class action litigation.

126.  <u>Injunctive/Declaratory Relief</u>: The elements of Rule 23(b)(2) are met. Defendants will continue to commit the unlawful practices alleged herein, and Class Members will remain at an unreasonable and serious safety risk as a result of the Defect. Defendants have acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

127.  <u>Predominance</u>: The elements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual Class Members, and a class action is the superior method for the fair and efficient adjudication of this controversy.

The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is not efficient, timely, or proper. Judicial resources will be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of hundreds or thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for those similarly situated to the Plaintiff.

128.    Plaintiff knows of no difficulty to be encountered in the maintenance of this  action that would preclude its maintenance as a class action.

129.    All-Clad has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief  with respect to the Class as a whole.

**FIRST CLAIM FOR RELIEF**
**Breach of Implied Warranties – Mass. Gen. Laws c. 106, §§ 2-314, 2-315**
**(Plaintiff Individually and on Behalf of All Others Similarly Situated)**

130.    Plaintiff hereby re-alleges and incorporates all allegations raised in the preceding Paragraphs into this cause of action and claim for relief as if fully set forth herein.

131.    Plaintiff brings this cause of action individually and on behalf of the Class.

132.    All-Clad is a merchant and was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Cookware.  All-Clad knew or had reason to know of the specific use for which the Cookware, as goods, was purchased.

133.    All-Clad provided Plaintiff and Class Members with implied warranties that the Cookware was merchantable and fit for the ordinary purposes for which they were sold.

134.    However, the Cookware is not fit for their ordinary purpose of providing reasonably reliable and safe heating of food because, *inter alia*, the Cookware contains a Defect preventing the Cookware from being cleaned in the dishwasher and, subsequently, safely heating food without the

possibility of cutting consumers.  Therefore, the Cookware is not fit for their particular purpose of being cleaned in the dishwasher, or safely heating and/or cooking food.

135.   The problems associated with the Defect, such as razor thin edges being created, are safety risks such that the Cookware does not permit for dishwasher cleaning or subsequently being used without the risk of injury to consumers and their property, and therefore, there is a breach of the implied warranty of merchantability under Mass. Gen. Laws c. 106, § 2-314.

136.   All-Clad impliedly warranted that the Cookware were of merchantable quality and fit for such use.  These implied warranties included, among other things: (i) a warranty that the Cookware manufactured, supplied, distributed, and/or sold by All-Clad was dishwasher safe; (ii) a warranty that the Cookware was safe and reliable for heating food; and (iii) a warranty that the Cookware would be fit for their intended use while the Cookware was being cleaned in the dishwasher and used.

137.   All-Clad had reason to know at the time of sale that the Cookware would be used for the particular purpose of being cleaned in the dishwasher, as well as safely heating and/or cooking food without the risk of being injured, and that consumers would rely on All-Clad's representations that the Cookware is dishwasher safe. Because of the Defect, the Cookware is not fit for safely being cleaned in the dishwasher, and subsequently heating and/or cooking food without risk of injury. Therefore, there is a breach of the implied warranty of fitness for a particular purpose under Mass. Gen. Laws c. 106, § 2-315.

138.   Contrary to the applicable implied warranties, the Cookware, at the time of sale and thereafter, was not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe methods of heating food or being washed in the dishwasher as represented.  Instead, the Cookware suffers from defective design and/or manufacture, as alleged herein.

139.   All-Clad's failure to adequately repair or replace the defective Cookware has caused the warranty to fail of its essential purpose.

140.    All-Clad breached the implied warranties because the Cookware was sold with the Defect, which substantially reduced and/or prevented the Cookware from being cleaned in the dishwasher as represented, and subsequently used for safe food preparation.

141.    As a direct and proximate result of the foregoing, Plaintiff and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## SECOND CLAIM FOR RELIEF
### Breach of Express Warranty – Mass. Gen. Laws c. 106, § 2-313
### (Plaintiff Individually and on Behalf of All Others Similarly Situated)

142.    Plaintiff hereby re-alleges and incorporates all allegations raised in the preceding Paragraphs into this cause of action and claim for relief as if fully set forth herein.

143.    In connection with its sale of the Cookware, All-Clad expressly warranted that it was free from defects at the time of shipping, suitable to be cleaned in the dishwasher, and suitable for heating food without risk of injury.

144.    The defectively designed and/or manufactured Cookware is subject to and otherwise covered by All-Clad's Limited Lifetime Warranty.

145.    Each of the Cookware models has an identical or substantially identical warranty.

146.    All-Clad was obligated, under the terms of the express warranty to adequately repair or replace the defective Cookware for Plaintiff and Class Members with dishwasher safe Cookware.

147.    In the Warranty, All-Clad warrants that the Cookware "will be free from defects in material, construction, or workmanship for the lifetime of the product under normal use and following care instructions. All-Clad will repair or replace the All-Clad cookware product in the country of purchase that is covered by this warranty." As alleged herein, the Cookware is not free from defects in workmanship and materials at the time they are "shipped" and thus the warranty is breached at the point of sale.

148.    All-Clad breached the warranty because it improperly and unlawfully denies valid warranty claims, misrepresents the cause of the problems associated with the Defect, and it has failed

or refused to adequately repair or replace the Cookware with non-defective, dishwasher safe units. Plaintiff and the Class Members have privity of contract with All-Clad through their purchase of the Cookware, and through the express written and implied warranties that All-Clad issued to its customers. All-Clad's warranties accompanied the Cookware and were intended to benefit end-users of the Cookware. To the extent Class Members purchased the Cookware from third-party retailers, privity is not required because the Class Members are intended third-party beneficiaries of the contracts between All-Clad and third-party retailers and because the express warranty is intended to benefit purchasers or owners subsequent to the third-party retailer; in other words, the contracts are intended to benefit the ultimate consumer or user of the Cookware.

149.    The express written warranties covering the Cookware were a material part of the bargain between All-Clad and consumers. At the time it made these express warranties, All-Clad knew of the purpose for which Cookware was to be used and cleaned.

150.    All-Clad breached its express warranties by selling Cookware that was, in actuality, not free of defects, not dishwasher safe, not made for a lifetime of dependable use, not made from merchantable material and workmanship, was unsafe for use, and could not be used for the ordinary purpose of heating food without risk of injury resulting from the Defect.  All-Clad breached its express written warranties to Plaintiff and Class Members in that the Cookware is defective at the time it leaves the manufacturing plant, and on the first day of purchase, creating a serious safety risk to Plaintiff and Class Members.

151.    Cookware that the Plaintiff and Class Members purchased contained a Defect that caused each of them damages including loss of the product, loss of the benefit of their bargain, and property damage.

152.    The limitations on remedies and the exclusions in All-Clad's warranties are unconscionable and unenforceable in light of the fact that All-Clad knew that the Cookware suffered from the Defect described herein and was not dishwasher safe.

153.     Plaintiff's daughter notified All-Clad of its breach of the express warranty when she discovered the hazardous condition of the Cookware. However, upon discovering the replacements were the same materials and design, recognized the replacements were defective and notified her mother.  As Plaintiff knew that making a warranty claim would result in receiving additional defective replacements, she recognized that making such a claim would be futile.

154.     Moreover, All-Clad was put on constructive notice about its breach through its review of consumer complaints and media reports described herein, and, upon information and belief, through product testing.

155.     Upon information and belief, All-Clad received further notice and has been on notice of the defective nature of the Cookware and of its breaches of warranties through customer warranty claims reporting problems to All-Clad and its retailers, consumer complaints at various sources, and its own internal and external testing. All-Clad also received such notice through Plaintiff's daughter who complained to All-Clad about the defective nature of the Cookware.

156.     All-Clad's notice is further highlighted by its routine excuse that the problems were being reported were a result of citrus based detergents.

157.     Despite having notice and knowledge of the defective nature of the Cookware, All-Clad failed to provide any relief to Class Members, failed to provide a non-defective replacement cookware to Plaintiff and Class Members, and otherwise failed to offer any appropriate compensation from the resulting damages.

158.     All-Clad breached its express warranty to adequately replace the Cookware despite its knowledge of the Defect, and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing the Cookware.

159.     To the extent that All-Clad offered to replace the defective Cookware, the warranty of replacement fails in its essential purpose given it is insufficient to make Plaintiff and Class Members whole because the replacements contain the same Defect, and are not dishwasher safe.

160.    Accordingly, recovery by Plaintiff and Class Members is not limited to the limited warranty of replacement, and they seek all remedies allowed by law.

161.    Had Plaintiff, Class Members, and the consuming public known that the Cookware was defective, was not dishwasher safe, posed an unreasonable risk of harm to themselves and their property, would cause damage, or that All-Clad would not properly honor its warranty, they would not have purchased the Cookware.

162.    To the extent any express warranties do not by their terms cover the Defect alleged in this Complaint, and to the extent the contractual remedy is in any other respect insufficient to make Plaintiff and Class Members whole, the warranty fails of its essential purpose and, accordingly, recovery by Plaintiff and Class Members is not restricted to the promises in any written warranties, and they seek all remedies that may be allowed.

163.    Any attempt by All-Clad to limit or disclaim the express warranty in a manner that would exclude coverage of the Defect is unconscionable as a matter of law because the relevant purchase transactions were tainted by All-Clad's concealment of material facts.  Thus, any such effort to disclaim, or otherwise limit, its liability for the Defect is null and void.

164.    As a direct and proximate result of All-Clad's breach of its express written warranties, Plaintiff and Class Members did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment for the defective Cookware, in addition to loss of the product and its intended benefits.

### THIRD CLAIM FOR RELIEF
### (IN THE ALTERNATIVE)
**Breach of Contract**
**(Plaintiff Individually and Behalf of All Others Similarly Situated)**

165.    Plaintiff hereby re-alleges and incorporates all allegations raised in the preceding Paragraphs into this cause of action and claim for relief as if fully set forth herein.

166.    To the extent All-Clad's commitment is deemed not to be a warranty under Massachusetts's Uniform Commercial Code, Plaintiff pleads in the alternative under common law warranty and contract law.

167.    Plaintiff and Class Members purchased the Cookware from All-Clad or through retailers such as Amazon.com, Williams-Sonoma, Bed Bath & Beyond, Bloomingdale's, Crate & Barrel, cutleryandmore.com, Kitchen Kapers, Macy's, Metro Kitchen, Sur la Table, The Cook's Warehouse, and Wayfair.

168.    All-Clad expressly warranted that the Cookware was fit for its intended purpose and that it was free of defects, dishwasher safe, and suitable for safe heating of food.

169.    All-Clad made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff, Class Members, and All-Clad.

170.    Defendant breached the warranties and/or contract obligations by placing the defective Cookware into the stream of commerce and selling it to consumers, when they knew the Cookware contained a Defect, was not dishwasher safe, and did not safely heat food without risk of injury.  These deficiencies substantially and/or completely impair the use and value of the Cookware.

171.    The deficiencies described existed when the Cookware left All-Clad's possession or control and was sold to Plaintiff and Class Members.  The deficiencies and impairment of the use and value of the Cookware was not discoverable by Plaintiff or Class Members at the time of the purchase of the Cookware.

172.    As a direct and proximate cause of All-Clad's breach of contract, Plaintiff and Class Members were harmed because they would not have purchased the Cookware if they knew the truth about the defective condition of the Cookware.

## FOURTH CLAIM FOR RELIEF
## (IN THE ALTERNATIVE)
### Unjust Enrichment
### (Plaintiff Individually and Behalf of All Others Similarly Situated)

173.    Plaintiff hereby re-alleges and incorporates all allegations raised in the preceding Paragraphs into this cause of action and claim for relief as if fully set forth herein.

174.    This alternative claim is asserted on behalf of Plaintiff and Class Members to the extent there is any determination that any contracts between Class Members and All-Clad do not

govern the subject matter of the disputes with All-Clad, or that Plaintiff does not have standing to assert any contractual claims against All-Clad.

175.    Plaintiff and Class Members conferred a monetary benefit on All-Clad, and All-Clad had knowledge of this benefit. The average price paid by Plaintiff and Class Members for the Cookware was more than $200.00.

176.    By its wrongful acts and omissions described herein, including selling the defective Cookware, All-Clad was unjustly enriched at the expense of Plaintiff and Class Members.

177.    Plaintiff and Class Members' detriment and All-Clad's enrichment were related to and flowed from the wrongful conduct alleged in this Complaint.

178.    It would be inequitable for All-Clad to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the defective Cookware.

179.    Plaintiff and Class Members seek restitution from All-Clad and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by All-Clad from their wrongful conduct and establishing a constructive trust from which Plaintiff and Class Members may seek restitution.

<u>**FIFTH CLAIM FOR RELIEF**</u>
**Negligence**
**(Plaintiff Individually and Behalf of All Others Similarly Situated)**

180.    Plaintiff hereby re-alleges and incorporates all allegations raised in the preceding Paragraphs into this cause of action and claim for relief as if fully set forth herein.

181.    At all times material hereto, All-Clad designed and manufactured the Cookware.

182.    All-Clad had a duty to Plaintiff and to Class Members to design and manufacture Cookware that was free of latent defects, was dishwasher safe as represented, and that did not present risk of injury while being used to heat food.

183.    All-Clad had a duty to design and manufacture the Cookware such that it was dishwasher safe, or was not represented to be, and would not deteriorate in such a way that would present significant risk of injury to Plaintiff and Class Members.

184. All-Clad had a duty to Plaintiff and to Class Members to test the Cookware to ensure that the Cookware was dishwasher safe and otherwise, ensure adequate performance of the Cookware for a reasonable period of use, and to ensure the Cookware would not be subject to premature failure or cause significant risk of injury while being used.

185. All-Clad had a duty to Plaintiff and to Class Members to ensure that the Cookware would not prematurely deteriorate in the dishwasher, either by testing or by verifying third-party test results.

186. All-Clad had a duty to Plaintiff and to Class Members to ensure that the Cookware complied with industry standards, testing, and safety guidelines.

187. All-Clad had a duty to Plaintiff and Class Members to forewarn purchasers, installers, and users regarding the known risk of product failures.

188. All-Clad failed to exercise ordinary and reasonable care in the design and manufacture of the Cookware and in determining whether the Cookware that it sold, and continued to sell, contained a latent Defect that would result in the failure of the Cookware to perform as reasonably expected.

189. All-Clad failed to exercise ordinary and reasonable care in the design and manufacture of the Cookware and breached the foregoing duties.

190. All-Clad breached its duty to the Plaintiff and Class Members to test the Cookware to ensure adequate performance of the Cookware for a reasonable period of use, including its dishwasher safety.

191. All-Clad breached its duty to Plaintiff and to Class Members to ensure that the Cookware components were suitable, either by testing or by verifying third-party test results.

192. All-Clad breached its duty to Plaintiff and to Class Members to ensure that the Cookware complied with industry standards, safety guidelines, and testing standards.

193. All-Clad breached its duty to Plaintiff and to Class Members to forewarn purchasers, installers, and users regarding the known risk of product failures.

194. The negligence of All-Clad, its agents, servants, and/or employees, include the

foregoing, as well as the following acts and/or omissions:

(a)    designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Cookware without adequately and thoroughly testing it to all applicable standards and safety guidelines;

(b)    designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Cookware without adequately testing long term performance;

(c)    designing, manufacturing, processing, distributing, delivering, supplying, inspecting marketing and/or selling the Cookware without adequately testing dishwasher safety;

(d)    negligently failing to ensure that the Cookware conformed to all applicable industry standards, safety guidelines, and testing standards; and

(e)    concealing information concerning the defect inherent in the Cookware from Plaintiff and the Class Members, while knowing that All-Clad's Cookware was defective and non-conforming with accepted industry standards and safety guidelines.

195.    Plaintiff and the Class Members have been damaged because the defective Cookware does not perform the ordinary purpose of being cleaned in the dishwasher, and heating food without the risk of injury.

196.     Plaintiff and Class Members have also been damaged as a direct and proximate result of the negligence, carelessness, recklessness, willfulness, and wanton behavior of All-Clad as aforesaid, including, but not limited to, damage to the Product, damage to other property, and related safety risks.

197.    As All-Clad's conduct was grossly negligent, reckless, willful, wanton, intentional, fraudulent, or the like, Plaintiff and Class Members are entitled to an award of punitive damages against All-Clad.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that this Court:

A.  Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.   Name Plaintiff as Class Representative and her counsel as Class Counsel;

C.   Award damages, including compensatory, exemplary, and statutory damages, to Plaintiff and the Class in an amount to be determined at trial;

D.   Grant restitution to Plaintiff and the Class and require Defendants to disgorge their ill-gotten gains;

E.   Permanently enjoin Defendants from engaging in the wrongful and unlawful conduct alleged herein;

F.   Award Plaintiff and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

G.   Award Plaintiff and the Class pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

H.   Award such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.


November 11, 2020                          Respectfully submitted,

                                          /s/ Alex Straus
                                          Alex R. Straus (SBN 321366)
                                          alex@gregcolemanlaw.com
                                          **WHITFIELD BRYSON LLP**
                                          16748 McCormick Street
                                          Los Angeles, CA  91436
                                          T: 917-471-1894
                                          alex@whitfieldbryson.com

                                          Daniel K. Bryson*
                                          Martha Geer*
                                          Harper T. Segui
                                          **WHITFIELD BRYSON LLP**
                                          900 W. Morgan Street
                                          Raleigh, NC 27603
                                          T: 919-600-5000
                                          dan@whitfieldbryson.com
                                          Martha@whitfieldbryson.com
                                          harper@whitfieldbryson.com

Gregory F. Coleman*
Rachel Soffin*
Lisa A. White*
Adam A. Edwards*
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
greg@gregcolemanlaw.com
rachel@gregcolemanlaw.com
lisa@gregcolemanlaw.com
adam@gregcolemanlaw.com

*To seek admission *pro hac vice*